UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SANDRA ALBRIGHT,

Plaintiff,

v.

CARL CHRISTENSEN, MD, et al.,

Defendants.

Case No. 20-11453
Honorable Laurie J. Michelson
Magistrate Judge David R. Grand

## OPINION AND ORDER GRANTING MOTION FOR SUMMARY JUDGMENT [13]

Sandra Albright, a resident of Ohio, suffers from chronic pain as a result of a car accident many years ago. Albright became addicted to opioids. In 2017, Albright was referred to Dr. Carl Christensen, a Michigan doctor who specializes in addiction medicine and pain management. Albright was admitted to a hospital in Michigan to undergo a one-week opioid detoxification supervised by Dr. Christensen. Albright now alleges that Dr. Christensen and his medical practice were negligent during her treatment.

In lieu of an answer, Defendants filed a motion for summary judgment asserting that Albright's complaint must be dismissed for failure to comply with Michigan law requirements for filing a medical malpractice suit. Albright argues that her suit is for negligence, not medical malpractice, and even if it is classified as a medical malpractice suit, the Michigan requirements do not apply in federal court. The Court finds that Michigan's notice and waiting-period requirements under Michigan Compiled Laws

§ 600.2912b are substantive state law that apply in federal court. Because Albright failed to comply with those requirements, and the statute of limitations has now expired, her case will be dismissed with prejudice.

## I.

Reading between the lines of Albright's complaint, it appears she became addicted to opioids as a result of attempts to manage chronic pain from a car accident. (ECF No. 1, PageID.2.) Albright was referred to Dr. Carl Christensen and his practice Christensen Recovery Services in Canton, Michigan for treatment of her opioid addiction. (*Id.*) After an initial consultation, Dr. Christensen developed a treatment plan beginning with a one-week detoxification that would include the use of a suboxone induction. (*Id.* at PageID.3.)

On May 30, 2018, Dr. Christensen conducted a conference call with Albright's case manager, Albright's sister, and Dr. Christensen's practice manager. (*Id.*) The participants finalized plans to begin Albright's detoxification the following week. (*Id.*) Albright, who was not on the call, claims she was not informed of this treatment plan. (*Id*.) During the call, Dr. Christensen was also apparently informed that an independent medical examiner recommended that Albright be forced off all of her medications immediately. (*Id.*)

Albright was admitted to Saint Joseph Mercy Hospital on June 4, 2018 to begin the detox. (*Id.*) Dr. Christensen started Albright on a "Dilaudid PCA" (apparently a pain relief method in which the patient controls the amount of pain medication administrated by a pump) and a "substitution therapy with phenobarbital" (where opioids are substituted with prescribed sedatives). (*Id.*)

2

Dr. Christensen met with Albright the next two days to attempt to discuss the treatment plan, but Albright was anxious and tearful, and Dr. Christensen apparently stopped the discussion. (*Id.* at PageID.3–4.)

On June 7, Dr. Christensen attempted to give Albright a dose of suboxone (a combination of buprenorphine and naloxone). (*Id.*) According to the National Institute on Drug Abuse, buprenorphine is a treatment for opioid use disorder which reduces cravings and withdrawal symptoms by binding to opioid receptors in the body. *See Medications to Treat Opioid Use Disorder Research Report*, National Institute on Drug Abuse (June 2018), at 3, https://perma.cc/Y9CU-58U3.

Albright alleges that she had an immediate reaction "including, but not limited to, muscular spasms/contortions, pain, and feelings of temporary paralysis and being completely out of it." (ECF No. 1, PageID.4.) Dr. Christensen administered a second dose of suboxone the next day, and Albright again had an immediate negative reaction. (*Id.*)

As a result of these reactions, Albright refused further suboxone treatment. (*Id.*) Dr. Christensen ordered Albright to be discharged the next day, June 9, 2018. But, "due to her condition, she was not released for discharge by another doctor for several days after." (*Id.*)

Albright avers that she continues to suffer from shaking, muscle spasms, and emotional distress as a result of her treatment. (*Id.*)

Albright filed this lawsuit against Dr. Christensen and Christensen Recovery Services on June 4, 2020. Albright alleges that Dr. Christensen was negligent in his treatment of Albright and in failing to obtain her informed consent. (*Id.* at PageID.20–22.) This Court's jurisdiction over Albright's state-law claims is premised on complete diversity

3

of the parties. (*Id.* at PageID.17.) In lieu of an answer, Defendants filed a motion for summary judgment, asserting that Albright's suit must be dismissed for failure to comply with Michigan's rules for filing a medical malpractice lawsuit, Michigan Compiled Laws § 600.2912b and § 600.2912d. (ECF No. 13.)[1]

## II.

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. "A fact is material only if its resolution will affect the outcome of the lawsuit." *Hedrick v. Western Reserve Care Sys.*, 355 F.3d 444, 451–52 (6th Cir. 2004) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). And "a dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Scott v. First S. Nat'l Bank*, 936 F.3d 509, 516 (6th Cir. 2019) (internal citations omitted).

## III.

There are two related questions at issue here. First, are Albright's negligence claims actually medical malpractice claims? If so, do Michigan's requirements for filing a medical malpractice claim apply in federal court? The Court begins with the first question, how to characterize Albright's claims.

---

[1] A motion for summary judgment is not a responsive pleading. *See* Fed. R. Civ. P. 12. But any issue from a failure to respond has not been raised and so is not before the Court.

## A.

Defendants argue that Albright's negligence claims are nothing more than thinly veiled medical malpractice claims. Under Michigan law, the substance of a claim rather than how it is labeled determines whether it is a malpractice claim. *See Dorris v. Detroit Osteopathic Hosp. Corp.*, 594 N.W.2d 455, 464 (Mich. 1999) ("[A] complaint cannot avoid the application of the procedural requirements of a malpractice action by couching its cause of action in terms of ordinary negligence." (modification in original; internal citations omitted)); *Adam v. Sisters of Bon Secours Nursing Care Ctr.*, No. 2007–001381, 2011 WL 3903146, *4 (Mich. Ct. App. Sept. 6, 2011) (holding gross negligence claim subject to malpractice requirements).

The test for determining whether a claim is actually for medical malpractice has two parts: (1) "whether the claim pertains to an action that occurred within the course of a professional relationship," and (2) "whether the claim raises questions of medical judgment beyond the realm of common knowledge and experience." *Bryant v. Oakpointe Villa Nursing Ctr.*, 684 N.W.2d 864, 871 (Mich. 2004). "If both these questions are answered in the affirmative, the action is subject to the procedural and substantive requirements that govern medical malpractice actions." *Id.*

As for the first element, Albright herself admits that her claims occurred "within the course of a professional relationship with Dr. Christensen." (ECF No. 10, PageID.58.) But Albright argues that the second element is not met because a jury could rely on common knowledge and experience to determine whether Dr. Christensen was negligent for

continuing the buprenorphine induction procedure after Albright experienced a negative reaction. (*Id.* at PageID.59.)

It is true that in some cases "[n]o expert testimony is necessary to determine whether [medical staff] should have taken some sort of corrective action" to reduce a known risk. *Bryant*, 684 N.W.2d at 876 (finding that plaintiff could bring an ordinary negligence claim against staff at a nursing home who failed to take any corrective action to reduce the risk of recurrence after a resident almost asphyxiated herself by getting tangled in her bedding); *see also Trowell v. Providence Hosp. & Med. Centers, Inc.*, 918 N.W.2d 645, 651 (Mich. 2018) (allowing a negligence claim against an aide who dropped a patient while carrying him unassisted after she had previously dropped the patient while attempting the same action). But this is not one of those cases.

It is clear that administering a buprenorphine induction, knowing the typical side effects, and deciding whether to continue the procedure when negative side effects occur are questions of specialized knowledge and medical judgment. The situation is not analogous to those in *Bryant* or *Trowell*, where a defendant discovered a risk obvious to a layperson and failed to take corrective action. Opioid addiction is notoriously difficult to treat. This is evidenced by Albright's week-long hospitalization involving multiple treatments supervised by an addiction specialist. Treatments that are not familiar to the average layperson. The question of whether Dr. Christensen should have continued the buprenorphine induction after Albright experienced a reaction was not a question an average juror would be equipped to answer. *See Estate Wrenn, by Wrenn v. Spectrum Cmty. Servs.*, No. 339594, 2019 WL 845711, at *6 (Mich. Ct. App. Feb. 21, 2019) ("Knowing

6

how to correctly monitor and supervise patients requires specialized and particularized knowledge to, for example, understand the patient's specific needs, identify risks faced by the individual patient, and understand how a patient's disease may influence behavior."); *Jones v. Corr. Med. Servs.*, *Inc.*, 845 F. Supp. 2d 824, 846 (W.D. Mich. 2012) (holding that issues related to diagnosis and treatment "are clearly issues that will require expert testimony for all but the most medically proficient factfinder to decide.").

This conclusion is further supported by Albright's complaint which includes a long list of ways in which Dr. Christensen allegedly failed to meet the professional standard of care. (ECF No. 5, PageID.21–22.) Albright's characterization of the standard of care makes it apparent that she is measuring Dr. Christensen's actions against those of a reasonable doctor in his position rather than a lay person. *See Jones*, 845 F. Supp. 2d at 846 ("Where 'the reasonableness of the action can be evaluated by a jury only after having been presented the standards of care pertaining to the medical issue before the jury explained by experts, a medical malpractice claim is involved.'" (quoting *Bryant*, 684 N.W.2d at 872)).

So the Court finds that the claims against Dr. Christensen and his practice sound in medical malpractice despite being labeled as ordinary negligence claims in the complaint.

**B.**

Having unmasked Albright's negligence claims as medical malpractice claims, the Court must turn to the thornier question of whether Michigan's malpractice rules apply to this federal suit.

Michigan law requires a plaintiff seeking to bring a medical malpractice claim to first comply with various requirements, including providing written, pre-suit notice to the

defendant(s) 182 days before filing, Mich. Comp. Laws § 600.2912b, and filing with the complaint an affidavit of merit signed by a medical health professional, Mich. Comp. Laws § 600.2912d. The parties agree that Albright did not complete these steps before filing this suit, and instead argue over whether the requirements apply in federal court.

The parties address these two requirements together, with Albright arguing that they are clearly procedural (and thus do not apply in federal court) and Christensen arguing they are clearly substantive (and thus do apply in federal court). But, because the two requirements are materially different, the Court will analyze them separately.

### 1.

The Court will begin with the issue that the parties address first and that is more frequently litigated by the courts: the affidavit-of-merit requirement contained in Mich. Comp. Laws § 600.2912d.

As a general matter, a federal court exercising diversity jurisdiction applies state substantive law and federal procedural rules. *See Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938). Both parties argue that the question of whether Michigan's affidavit-of-merit requirement is procedural or substantive is answered by the *Erie* doctrine. But *Erie* does not tell courts what to do when it is not clear whether a state law is substantive or procedural. Defendants characterize the Michigan medical malpractice laws as "substantive measures designed to ensure a plaintiff has a legitimate cause of action before disrupting a segment of the health care system and imposing significant expenses on defendants." (ECF No. 11, PageID.64.) But Albright says the laws are clearly procedural rules that, under *Erie*, must give way to the Federal Rules of Civil Procedure governing

8

pleading. (ECF No. 10, PageID.57.) But the parties do not approach this issue with the right framework. When both a federal rule and a state law "attempt to answer the same question," the Court need not "wade into *Erie*'s murky waters." *Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398–99 (2010). Instead, the Court applies "a 'two-step framework' to determine which law controls." *Scola v. Publix Supermarkets, Inc.*, 557 F. App'x 458, 463 (6th Cir. 2014) (quoting *Shady Grove*, 559 U.S. at 417 (Stevens, J., concurring); *see also Gallivan v. United States*, 943 F.3d 291 (6th Cir. 2019) (applying the *Shady Grove* framework to determine whether an Ohio affidavit-of-merit rule applied in federal court). Here, as will be discussed further below, it appears that both the Federal Rules of Civil Procedure and the state statute govern the question of whether a medical malpractice case requires an affidavit of merit to be attached to a complaint. So the Court must apply the *Shady Grove* framework.

Although *Shady Grove* supplies the framework for this analysis, there is some disagreement among courts and scholars on how to interpret that opinion. *Shady Grove* was a fractured opinion: Justice Scalia wrote for a four-justice plurality, Justice Stevens wrote a separate concurrence, and Justice Ginsburg wrote for four dissenting justices. *See generally* 559 U.S. 393. A majority of the justices agreed that the first step of the framework was to determine whether the applicable federal rule or rules answer "the question in dispute." *Id.* at 398.

The main discrepancy between Justice Scalia's approach and Justice Stevens' approach is at step two. The plurality thought that this step is quite simple: "if there is a valid Federal Rule of Civil Procedure on point, a federal court sitting in diversity must

apply the Federal Rule, 'regardless of its incidental effect upon state-created rights.'" *Scola v. Publix Supermarkets, Inc.*, 557 F. App'x 458, 463 (6th Cir. 2014) (quoting *Shady Grove*, 559 U.S. at 410 (plurality opinion)). The plurality focused only on the nature of the federal rule—whether "it really regulates procedure." *Shady Grove*, 559 U.S. at 411. And Justice Scalia noted that the Supreme Court has never found a Federal Rule of Civil Procedure to be invalid under that test. On the other hand, Justice Stevens focused more on the nature of the state law and whether it is "part of the State's definition of substantive rights and remedies." *Id.* at 417 (Stevens, J., concurring). So in the second step he asks whether the federal rule would displace "a state law that is procedural in the ordinary use of the term but is so intertwined with a state right or remedy that it functions to define the scope of the state-created right." *Id.* at 423 (Stevens, J., concurring).

To determine the precedential value of a fractured Supreme Court opinion like *Shady Grove*, courts apply the rule of *Marks v. United States*: "When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds." 430 U.S. 188, 193 (1977) (internal citations omitted).

The position that appears to have the support of the most courts and scholars is that Justice Stevens' concurrence is the narrowest of the fractured opinions and thus controlling. *See e.g.*, *In re Packaged Ice Antitrust Litig.*, 779 F.Supp.2d 642, 660 (E.D. Mich. 2011) ("Courts interpreting the *Shady Grove* decision, and searching for guidance on this issue, have concluded that Justice Stevens' concurrence is the controlling opinion by which

interpreting courts are bound."); *Leonard v. Abbott Labs., Inc.*, No. 10-CV-4676 ADS WDW, 2012 WL 764199, at *12 (E.D.N.Y. Mar. 5, 2012) ("[T]he majority of district and circuit courts [] have found Justice Stevens' concurring opinion was on the 'narrowest grounds,' and therefore is the controlling opinion.") (collecting cases); Ryan C. Williams, *Questioning Marks: Plurality Decisions and Precedential Constraint*, 69 Stan. L. Rev. 795, 861–62 (2017) ("Most lower courts that have considered the issue have concluded that Justice Stevens's concurrence reflects the controlling 'narrowest grounds' opinion under *Marks*.") (collecting cases); Colin Quinlan, *Erie and the First Amendment: State Anti-SLAPP Laws in Federal Court After Shady Grove*, 114 Colum. L. Rev. 367, 388 (2014) ("Justice Stevens agreed with the four dissenters that conflicts between state law and the Federal Rules could be resolved in favor of a state procedural law with substantive character. . . . Thus his concurrence arguably represents the dominant opinion on the second step of the Rules Enabling Act analysis."). *But see Abbas v. Foreign Policy Grp., LLC*, 783 F.3d 1328, 1337 (D.C. Cir. 2015) (following pre-*Shady Grove* precedent because "neither opinion can be considered the *Marks* middle ground or narrowest opinion, as the four Justices in dissent simply did not address the issue").

Justice Stevens' concurrence leaves open the possibility that some state laws that appear procedural in nature, but are actually intertwined with state substantive goals, will apply in federal court. *Shady Grove*, 559 U.S. at 423 (Stevens, J., concurring). This is a narrower holding than that of the plurality which effectively states that all federal rules of procedure are valid and thus must be applied in lieu of a conflicting state law, no matter the nature or purpose of the state law. *See id.* at 410 (plurality opinion). Additionally, the

four justices in dissent seem to agree with Justice Stevens that some state procedural rules are substantive such that they must apply in federal court. *Id.* at 452–58 (Ginsburg, J., dissenting). So under *Marks*, Stevens' concurrence is both the narrowest opinion and garners, at least implicitly, the support of a majority of justices (the plurality justices in regards to step one of the analysis and the dissent justices in regards to step two of the analysis).

And this majority view is consistent with the first published Sixth Circuit case to confront the debate. In *Whitlock v. FSL Mgmt., LLC*, 843 F.3d 1084 (6th Cir. 2016), the Court, albeit in a footnote, stated: "As Justice Stevens's opinion is the narrowest in support of the judgment, it technically controls." *Id.* at 1095 n.2 (citing *Marks*, 430 U.S. at 193).

So most everything seems to point in one direction. The rule of *Marks* suggests that Justice Stevens' opinion controls. A majority of courts have reached that conclusion. And the Sixth Circuit has even said that his opinion is "the narrowest." With the stage set that way, this Court would simply apply Justice Stevens' approach to step two, as the court did in *Jones v. Corr. Med. Servs., Inc.*, 845 F. Supp. 2d 824, 853 (W.D. Mich. 2012) (finding Stevens' opinion to be controlling and under that framework finding no conflict between the federal rules and the Michigan statutes.).

But things took a turn in 2019. In *Gallivan v. United States*, 943 F.3d 291 (6th Cir. 2019), the Sixth Circuit addressed the question of whether Ohio plaintiffs are required to file an affidavit of merit in accordance with an Ohio rule of civil procedure in order to state a claim for medical negligence in federal court. *Id.* at 293. At the first step of *Shady Grove* the Court found that Federal Rules 8(a), 9, and 12 did, in fact, answer the question in

dispute: none required the plaintiff to file an affidavit of merit with his federal complaint. *Id.* at 294. But contrary to the opinion of the majority of courts and the Sixth Circuit's prior statement in *Whitlock* that Justice Stevens' opinion controls, the court in *Gallivan* characterized the second step as simply examining whether the federal rules are valid. In doing so, the *Gallivan* court did not cite to *Shady Grove*. Instead, the Court relied on a pre-*Shady Grove* rule that the federal rules are presumptively valid. *Id.* at 294 (citing *Burlington N. R.R. Co. v. Woods*, 480 U.S. 1, 6 (1987)). This is similar to Justice Scalia's statement that the Supreme Court has never found a Federal Rule of Civil Procedure to be invalid.

Although *Gallivan* is the most recent Sixth Circuit opinion on this issue, the Court is hesitant to follow *Gallivan*'s approach to step two of the *Shady Grove* framework for several reasons. For one, *Gallivan* did not address the relevant test as the *Shady Grove* plurality actually stated it: does the federal rule really regulate procedure? *See Shady Grove*, 559 U.S. at 407. Moreover, no court that has thoroughly addressed the interpretation of *Shady Grove* has found the *Shady Grove* plurality's approach to the second step to be controlling. This make sense—the opinion only garnered four votes. In light of *Whitlock*, the consensus of the majority of other courts, and an analysis of *Marks*, this Court believes that Stevens' concurrence is the controlling opinion of *Shady Grove*. Hopefully, though, the Sixth Circuit will soon have an opportunity to expressly state which opinion of *Shady Grove* is controlling.

Ultimately, though, the approach taken at step two of *Shady Grove* leads to the same place regardless. So the Court now turns to the application of the two-part *Shady Grove*

framework to Michigan's affidavit-of-merit requirement. Since both the plurality and concurrence in *Shady Grove* agree that the inquiry involves two steps, the Court will analyze the steps in turn under both the Stevens approach and the *Gallivan* approach.

On a macro level, Justices Scalia and Stevens agree on the approach to step one. But the two justices use different language to describe the question at issue. Justice Scalia (and *Gallivan*) characterize the first question as "whether the Federal Rules of Civil Procedure answer the question in dispute." *Gallivan*, 943 F.3d at 293 (citing *Shady Grove*, 559 U.S. at 398). Justice Stevens instead asks if the federal rule at issue is "sufficiently broad to control the issue before the court." *Godin v. Schencks*, 629 F.3d 79, 86 (1st Cir. 2010) (quoting *Shady Grove*, 559 U.S. at 421).

In Albright's case, the answer under either formulation of the question is "yes." In *Gallivan*, the Court gave a thorough analysis of the federal rules that answer the question of whether a plaintiff needs to file an affidavit along with her complaint in order to state a claim for medical negligence. *See* 943 F.3d at 293. First, Rule 8(a) outlines the general rules of pleadings, which do not include the requirement of an affidavit. Fed. R. Civ. P. 8(a). And Rule 9 specifies the situations when heightened pleading is required—but none apply to a medical malpractice case. Fed. R. Civ. P. 9. And finally, Rule 12(b)(6) tells us that a complaint need only allege facts sufficient to state a plausible claim for relief to survive a motion to dismiss—no evidentiary support is required. Fed. R. Civ. P. 12(b)(6). So, *Gallivan* answers, the federal rules answer the question in dispute and make clear that a plaintiff is not required to file an affidavit with her complaint. 943 F.3d at 294. Although the Michigan affidavit-of-merit statute is not identical to the Ohio rule at issue in *Gallivan*,

14

they both require plaintiffs to file an affidavit along with their complaint. So the above analysis in *Gallivan* applies to Michigan's statute as well.

*Gallivan*'s second step simply concludes that the Federal Rules of Civil Procedure are presumptively valid. Under this approach, since Rules 8, 9, and 12 answer the question in dispute and are presumptively valid, the federal rules control and the affidavit-of-merit requirement does not apply in federal court.

The analysis under Stevens' approach to step two is a bit more complicated. The Court must look to the state law at issue and determine if it is the type of law that is "procedural in the ordinary use of the term but is so intertwined with a state right or remedy that it functions to define the scope of the state-created right." *Shady Grove*, 518 U.S. at 423 (Stevens, J., concurring).

There are certainly some substantive goals behind the affidavit-of-merit statute. Michigan courts have discussed how the statute, along with the notice statute, were passed to help reduce the number of frivolous lawsuits, protect doctors from the time and expense of defending against these lawsuits, and to focus on plaintiffs with meritorious claims. *See, e.g.*, *Dowidait v. Adams*, No. 217726, 2001 WL 824473, at *3 (Mich. Ct. App. July 20, 2001) (M.C.L. § 600.2912d . . . involves substantive policy considerations regarding the avoidance of medical malpractice claims lacking merit. The clear legislative intent behind the requirement that an affidavit of merit signed by a health professional accompany the complaint was designed to further this legislative policy goal.")

But the Michigan courts have not made clear whether they think these laws should be considered substantive or procedural. *See, e.g.*, *Collins v. DMC Hosp. P'ship*, No.

296052, 2011 WL 801983 (Mich. Ct. App. Mar. 8, 2011) (declining to classify § 600.2912b and § 600.2912d as procedural or substantive). This is different from the Ohio rule at issue in *Gallivan*, which the Ohio Supreme Court had explicitly classified as "a heightened pleading requirement." 943 F.3d at 296 (internal citation omitted). But even though the Michigan courts have not clearly spoken, the Michigan affidavit-of-merit can also be most fairly classified as a pleading requirement as it requires the plaintiff to attach the affidavit to the complaint at the time of filing. *See* Mich. Comp. Laws § 600.2912d. And the rule does not actually affect the merits of a medical practice suit—if the rule did not apply, frivolous claims would still be weeded out at another stage of the lawsuit. *See* Benjamin Grossberg, *Uniformity, Federalism, and Tort Reform: The Erie Implications of Medical Malpractice Certificate of Merit Statutes*, 159 U. Pa. L. Rev. 217, 272 (2010) ("[C]ertificate of merit statutes have an almost negligible effect on the outcome of individual adjudications. Instead, their greater purpose is in the aggregate.").

These facts must be considered in light of Justice Stevens' warning that "the bar for finding an Enabling Act problem is a high one." *Shady Grove*, 559 U.S. at 432 (Stevens, J., concurring). "The mere possibility that a federal rule would alter a state-created right is not sufficient. There must be little doubt." *Id.* In the case of the affidavit-of-merit rule, the Court has doubt that failure to apply it would alter a substantive state right. The number of medical malpractice claims that federal courts must litigate is limited. Because courts can decline to exercise supplemental jurisdiction over such claims, the only instances where a federal court must litigate a medical practice claim is when there is a diverse plaintiff or a claim against a federal employee. So even if a small number of frivolous medical

malpractice claims end up in federal court, they are unlikely to substantially affect Michigan's overall scheme to limit medical malpractice claims and control health care costs. *See* Grossberg, *supra*, at 272–73 ("Because the statute's intent lies not in determining the scope of the rights or remedies of individual litigants, but rather in its aggregate effect on litigation, allowing a small proportion of cases to proceed in federal court without the certificate requirement will present minimal disruption to the state's scheme.").

For these reasons, the Court cannot say that Michigan's affidavit-of-merit requirement falls within Justice Stevens' narrow class of rules that are procedural in nature but affect a substantive state right. So no matter which interpretation of *Shady Grove* the Court applies, Michigan Compiled Laws § 600.2912d, which requires an affidavit of merit to be filed with a medical malpractice complaint, does not apply in federal court.

### 2.

The analysis of Michigan's affidavit-of-merit requirement does not end the Court's task because Defendants also argue that Albright is required to comply with Michigan Compiled Laws § 600.2912d. This statute requires a plaintiff alleging medical malpractice to provide pre-suit notice to the defendant health care provider no less than 182 days before a lawsuit is filed.

As discussed above, when a state law and a federal procedural rule both appear to answer the same question, courts must apply the *Shady Grove* framework and need not "wade into *Erie*'s murky waters unless the federal rule is inapplicable or invalid." *Shady Grove*, 559 U.S. at 398. But when there is no federal rule on point, a court must make "the typical, relatively unguided *Erie* Choice." *Hanna v. Plumer*, 380 U.S. 460, 471 (1965).

Neither party argues that *Shady Grove* applies. And, as will be explained, the Court sees no conflict between Michigan's notice-of-intent requirement statute and any federal rules.

Unlike the affidavit of merit, pre-suit notice is not a pleading requirement. The statute requires a plaintiff seeking to sue for medical malpractice to provide notice in advance of filing suit but does not require that compliance be pleaded in the complaint or that any evidence of such be attached to the complaint. *See* Mich Comp. Laws § 600.2912b. So there is no conflict with Federal Rules 8 or 9. Nor is there a conflict with Federal Rule 12(b) governing motions to dismiss. Because a plaintiff is not required to plead or prove that she complied with § 600.2912b in her complaint, non-compliance would not be grounds for a motion to dismiss. *See Schmigel v. Uchal*, 800 F.3d 113, 122 (3d Cir. 2015) (holding that because a notice requirement was not part of pleadings and instead can form the basis for a motion for summary judgment, there is no conflict with Rule 12).

Albright also raises a potential conflict with Rule 3. But the alleged conflict is a false one because the mechanism for beginning a case in federal court is unaltered by § 600.2912b and the notice requirement instead acts as an affirmative defense to be raised at summary judgment. Rule 3 simply says that the procedural mechanism to initiate a case in federal court is the filing of a complaint. § 600.2912b does not change that fact. The statute is instead concerned with requirements that must be completed *before* filing a complaint. Whether or not a plaintiff complies with the statute, they may still initiate a case in federal court by filing a complaint. Indeed, this case is an example. As discussed above, there is no requirement that compliance with the statute be pleaded in a complaint or otherwise proven at the time of filing. And although the Michigan Supreme Court has held

18

that "the filing of a complaint before the expiration of the [notice-of-intent] waiting period does not commence an action," *Burton v. Reed City Hosp. Corp.*, 691 N.W.2d 424, 429 (Mich. 2005), *Burton* also makes clear that this is an issue to be raised as an affirmative defense, *id.; see also Tyra v. Organ Procurement Agency of Michigan*, 869 N.W.2d 213, 223 (Mich. 2015) (referring to the notice requirement as an affirmative defense). Defining what constitutes an affirmative defense is considered a matter of state law in a diversity case. *See Roskam Baking Co. v. Lanham Mach. Co.*, 288 F.3d 895, 901 (6th Cir. 2002). And under Michigan law, an affirmative defense does not relate to the complaint or plaintiff's other pleadings and instead "denies that the plaintiff is entitled to recover on the claim for some reason not disclosed in the plaintiff's pleadings." *Law Offices of Jeffrey Sherbow, PC v. Fieger & Fieger, PC*, 930 N.W.2d 416, 430–31 (Mich. Ct. App. 2019) (internal citations omitted). State-defined affirmative defenses do not conflict with any federal rules. Although Rule 8(c) references affirmative defenses, it only dictates that affirmative defenses must be stated in response to a pleading and provides a non-exhaustive list of possible defenses. Fed. R. Civ. P. 8(c)(1). So, in sum, a plaintiff may file a complaint in accordance with Rule 3 and then, if the defendant believes the plaintiff did not comply with the notice statute, the defendant can then raise that defect as an affirmative defense through a motion for summary judgment.

Because there is no federal rule that conflicts with Michigan notice-of-intent requirements, the Court applies the traditional *Erie* analysis. The traditional *Erie* analysis considers whether a state law is outcome determinative and whether failure to apply the law would frustrate "the twin aims of the *Erie* rule: discouragement of forum-shopping and

avoidance of inequitable administration of the laws." *Id.* at 468; *Guaranty Trust Co. v. York*, 326 U.S. 99, 109 (1945).

Failure to apply this Michigan law would clearly be outcome determinative in this case. Albright admits she made no attempt to comply with the notice requirement. So if the notice requirement applies, Albright's case must be dismissed; but if the requirement does not apply, Albright's case may proceed.

Because any variation between state and federal rules can be outcome determinative depending on context, *Hanna* cautions that the outcome determination test "cannot be read without reference to the twin aims of the Erie rule." 380 U.S. at 468. Unlike the minor procedural rules, such as time limits for filing pleadings, offered as examples in *Hanna*, failure to apply Michigan's notice rule would encourage forum shopping. If the notice statute is not applied in federal courts, plaintiffs who have the option of filing in state court or a diversity case in federal court would be able to choose federal court to avoid the requirement of complying with the Michigan notice and waiting period requirement. This case is a prime example. If Albright had filed her case in state court, she clearly would have been required to comply with the notice statute (as well as the affidavit-of-merit statute). Albright instead chose to avoid the expense and effort of providing notice (which requires a statement that includes not just the factual basis of the claim, but also more complicated details like the applicable standard of care and an explanation of what action should have been taken to comply with that standard, *see* Mich. Comp. Laws § 600.2912b) and skip the 182-day waiting period by filing in federal court. If plaintiffs are able to avoid these onerous requirements by filing in federal court, this will surely encourage forum shopping.

Relatedly, consistent application of the Michigan notice statute will avoid inequitable administration of the laws. Without this conclusion, out-of-state plaintiffs filing cases against Michigan doctors would have less burdensome requirements for filing a medical malpractice case than in-state plaintiffs.

This analysis aligns with that of the Third Circuit in *Schmigel v. Uchal*, 800 F.3d 113 (3d Cir. 2015). In *Schmigel*, the court analyzed whether a Pennsylvania rule requiring fair notice to a plaintiff before dismissing a malpractice suit was substantive or procedural. *Id.* at 115. The court found that the rule did not conflict with any federal rule, that failing to require notice would be outcome determinative, and consistent application of the requirement would ensure equitable administration of the law in state and federal courts. *Id.* at 121–23.

So the *Erie* analysis clearly points to the conclusion that the Michigan notice-of-intent statute is substantive and must be applied in federal courts as well as state courts in Michigan.

### 3.

Albright concedes that she did not comply with Michigan's requirements to provide notice. Because she failed to comply, the filing of this suit did not toll the statute of limitations. *See Walker v. Armco Steel Corp.*, 446 U.S. 740, 751 (1980) (holding that state tolling rules are substantive law and apply in federal court); Mich. Comp. Laws § 600.5856 (the statute of limitations is tolled "[a]t the time notice is given in compliance with the applicable notice period under section 2912b"). And the two-year statute of limitations

expired four days after the complaint was filed. (*See* ECF No. 13, PageID.82.) So Albright's claims are now time-barred and her suit must be dismissed with prejudice.

## IV.

Albright failed to comply with Michigan Compiled Laws § 600.2912b, which is a substantive state law applicable in federal court. The statute of limitations, which was not tolled when Albright filed this action because Albright failed to comply with the notice requirement of § 600.2912b, has now expired. Thus, Defendants' motion for summary judgment (ECF No. 13) is GRANTED and Albright's complaint is DISMISSED WITH PREJUDICE.

SO ORDERED.

Dated: December 17, 2020

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE